Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued April 15, 2003　　　　　Decided June 6, 2003

No. 02-1264

CELLULAR TELECOMMUNICATIONS & INTERNET ASSOCIATION AND
CELLCO PARTNERSHIP, D/B/A VERIZON WIRELESS,
PETITIONERS

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

CINGULAR WIRELESS LLC, ET AL.,
INTERVENORS

————

On Petition for Review of an Order of the
Federal Communications Commission

————

*Andrew G. McBride* argued the cause for petitioners. With him on the briefs were *John T. Scott III*, *Michael F. Altschul*, and *R. Michael Senkowski*.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*John E. Ingle*, Deputy Associate General Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were *R. Hewitt Pate*, Acting Assistant Attorney General, U.S. Department of Justice, *Catherine G. O'Sullivan* and *Andrea Limmer*, Attorneys, *John A. Rogovin*, Acting General Counsel, Federal Communications Commission, *Richard K. Welch*, Associate General Counsel, and *Rodger D. Citron*, Counsel. *Stewart A. Block*, Counsel, entered an appearance.

*L. Andrew Tollin, L. Charles Keller, Craig E. Gilmore, Glenn S. Rabin, Douglas I. Brandon, Laura R. Handman, Carol L. Tacker, Luisa L. Lancetti*, and *Lawrence J. Movshin* were on the brief for intervenors Cingular Wireless LLC, et al., in support of petitioners. *Kenneth D. Patrich* entered an appearance.

*James Bradford Ramsay* was on the brief for intervenor National Association of Regulatory Utility Commissioners in support of respondent.

*Richard P. Bress* and *James H. Barker* were on the brief for intervenor Leap Wireless International, Inc., urging affirmance.

Before: Edwards, Randolph and Tatel, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* Edwards.

Edwards, *Circuit Judge*: Currently, a wireless telephone customer who wishes to switch from one wireless service provider to another must also change telephone numbers. In 1996, the Federal Communications Commission ("Commission" or "FCC") promulgated regulations requiring wireless carriers to provide "number portability" – the ability of consumers to keep their phone numbers when they switch wireless carriers – and set a compliance date of June 30, 1999. *See Telephone Number Portability, First Report and Order and Further Notice of Proposed Rule*, 11 F.C.C.R. 8352, 1996 WL 400225 (1996) ("*First Report and Order*"); 47 C.F.R. § 52.31. In 1999, the Commission granted a request from petitioner Cellular Telecommunications & Internet Association ("CTIA"), pursuant to 47 U.S.C. § 160(a), for *temporary*

forbearance from enforcement of the Commission's wireless number portability rules, and extended the compliance deadline to November 24, 2002. *See CTIA's Petition for Forbearance From Commercial Mobile Radio Services Number Portability Obligations, Memorandum Opinion and Order*, 14 F.C.C.R. 3092, 1999 WL 58618 (1999) ("*Temporary Forbearance Order*"). Petitioner Verizon Wireless then sought permanent forbearance from the Commission's wireless number portability rules. On July 26, 2002, the Commission denied Verizon Wireless' forbearance petition, but extended the enforcement deadline to November 24, 2003. *See Verizon Wireless's Petition for Partial Forbearance from the Commercial Mobile Radio Services Number Portability Obligation, Memorandum Opinion and Order*, 17 F.C.C.R. 14,972, 2002 WL 1733284 (2002) ("*Order*").

In the instant case, petitioners CTIA and Verizon Wireless seek review of the Commission's *Order* denying permanent forbearance from enforcement of the Commission's 1996 rules requiring wireless carriers to provide number portability. Petitioners challenge the Commission's statutory authority to impose wireless number portability. Petitioners also contend that the Commission misinterpreted and misapplied § 10(a) of the Telecommunications Act of 1996, 47 U.S.C. § 160(a), which requires the Commission to forbear from enforcement of its regulations if three standards are met, including the condition that "enforcement ... is not necessary for the protection of consumers."

We dismiss the petition for review in part and deny the petition in part. We first find that petitioners' challenge to the FCC's authority to impose wireless number portability is time-barred. A petition for judicial review to challenge a final order of the Commission must be filed "within 60 days after its entry." *See* 28 U.S.C. § 2344; *see also* 47 U.S.C. § 402(a). The FCC promulgated the number portability rules in July 1996 and the petition for review in this case was not filed until August 2002. The petition for review is clearly untimely. The statutory time limit is jurisdictional. Therefore, we are constrained to dismiss the untimely petition for review for want of jurisdiction.

On petitioners' challenge to the Commission's decision not to forbear from enforcement of the wireless number portability rules, we conclude that the Commission's interpretation and application of the second prong of the enforcement test under § 10(a) ("enforcement ... is not necessary for the protection of consumers") was permissible and reasonable. The statutory term "necessary" does not have a plain meaning under Step One of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). And, in the context of the forbearance statute, "necessary" certainly cannot plainly mean "absolutely required" or "indispensable," as petitioners would have it, for that would leave the second prong of the forbearance test with no obvious applications. The Commission construed the term "necessary" to mean that there must be a strong connection between what the agency does by way of regulation and what the agency permissibly seeks to achieve with that regulation. Under this reasonable interpretation of the forbearance statute, the Commission found that number portability rules are required to achieve the desired statutory goal of consumer protection. The Commission therefore did not err in declining to forbear from enforcement of the wireless number portability rules. We therefore deny the petition for review of the Commission's forbearance decision.

## I.  BACKGROUND

Congress passed the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56, codified at 47 U.S.C. § 151 *et seq.* ("the 1996 Act" or "the Act"), to "promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." 1996 Act, preamble. In pursuit of that goal, § 10(a) directs that the Commission

> shall forbear from applying any regulation or any provision of this chapter to a telecommunications carrier or telecommunications service, or class of telecommunications carriers or telecommunications

services, in any or some of its or their geographic markets, if the Commission determines that–

**(1)** enforcement of such regulation or provision is not necessary to ensure that the charges, practices, classifications, or regulations by, for, or in connection with that telecommunications carrier or telecommunications service are just and reasonable and are not unjustly or unreasonably discriminatory;

**(2)** enforcement of such regulation or provision is not necessary for the protection of consumers; and

**(3)** forbearance from applying such provision or regulation is consistent with the public interest.

47 U.S.C. § 160(a).

The Act defines "number portability" as "the ability of users of telecommunications services to retain, at the same location, existing telecommunications numbers without impairment of quality, reliability, or convenience when switching from one telecommunications carrier to another." *Id.* § 153(30). Section 251(b) of the Act requires all local exchange carriers "to provide, to the extent technically feasible, number portability in accordance with requirements prescribed by the Commission." *Id.* § 251(b)(2). The Act defines "local exchange carrier" ("LEC") as

any person that is engaged in the provision of telephone exchange service or exchange access. Such term does not include a person insofar as such person is engaged in the provision of a commercial mobile service under section 332(c) of this title, except to the extent that the Commission finds that such service should be included in the definition of such term.

*Id.* § 153(26). The Commission has not made a determination that commercial mobile radio service ("CMRS" or "wireless") service should be included in the definition of "local

exchange carrier." The Act thus does not expressly require wireless carriers to provide number portability.

On July 2, 1996, the Commission promulgated rules requiring wireless carriers to provide number portability. *See First Report and Order*, 11 F.C.C.R. 8352. Although wireless carriers are not LECs, the Commission, in its *First Report and Order*, concluded that it had independent authority, under 47 U.S.C. §§ 151, 152, 152 & 332, to require wireless carriers to provide number portability. *Id.* at 8355. The Commission set a compliance date of June 30, 1999 for wireless carriers. *Id.* On petition for reconsideration, the Commission reaffirmed its principal findings. *See Telephone Number Portability, First Memorandum Opinion and Order on Reconsideration*, 12 F.C.C.R. 7236, 7315-17, 1997 WL 106479 (1997) ("*First Reconsideration Order*").

On May 30, 1997, petitioner Verizon Wireless' predecessor in interest, Bell Atlantic NYNEX Mobile, filed a petition for review of the Commission's wireless number portability rules in this court, challenging the Commission's authority to impose wireless number portability. The petition was supported by a number of intervenors, including petitioner CTIA. The case was transferred to the Tenth Circuit and briefed.

Meanwhile, on December 16, 1997, CTIA filed a forbearance petition with the Commission under § 10(a) of the Act, 47 U.S.C. § 160(a), seeking temporary forbearance from enforcement of the number portability requirements for wireless carriers until completion of a five-year build-out period prescribed by the Commission. On February 9, 1999, the Commission granted the petition and extended the wireless number portability enforcement deadline to November 24, 2002. *See Temporary Forbearance Order*, 14 F.C.C.R. at 3093, 3116-17. The Commission found that the three-prong test for forbearance under § 10(a) had been met. It found that wireless number portability was not necessary at that time to ensure just and reasonable charges and practices, because competition in the wireless market had increased significantly. Nor was wireless number portability necessary at that time to protect consumers, because the demand for

number portability among consumers was low. Finally, the Commission found temporary forbearance consistent with the public interest because the industry needed additional time to develop number portability technology and improvements likely to enhance service and competition. *See id.* at 3101-09. But the Commission rejected permanent forbearance, because, in the longer term, wireless number portability was expected to become increasingly important to consumers as wireless phones became potential substitutes for their wireline phones. *See id.* at 3103-04.

On March 19, 1999, in light of the Commission's extension of the enforcement deadline to November 24, 2002, Bell Atlantic and the Commission agreed to dismiss without prejudice the case that was pending before the Tenth Circuit. The stipulated dismissal provided that the Commission "shall not object to Bell Atlantic Mobile's presentation of the same issues and arguments presented in this appeal in any other present or future proceeding involving review of an FCC action or order concerning CMRS number portability." Joint Motion for Dismissal, *Bell Atlantic NYNEX Mobile, Inc. v. FCC*, No. 97-9551 (10th Cir. filed Mar. 19, 1999), *reprinted in* Joint Appendix ("JA") 1055.

On July 26, 2001, with the November 2002 enforcement deadline approaching, Verizon Wireless filed a petition with the Commission, seeking *permanent* forbearance from the wireless number portability rules under § 10(a). Verizon Wireless claimed that the wireless market was already sufficiently competitive; that the industry should not be required to implement wireless number portability while attempting to comply with other regulatory requirements; and that the costs of implementing wireless number portability would exceed the benefits. *See* Verizon Wireless' Petition Pursuant to 47 U.S.C. § 160 for Partial Forbearance from the CMRS Number Portability Obligation, JA 305-07. On July 26, 2002, the Commission issued the *Order* that is the subject of the instant petition for judicial review. The Commission denied Verizon Wireless' petition for permanent forbearance, but extended the implementation deadline by another year, to November 24, 2003. *See Order*, 17 F.C.C.R. at 14,972.

The Commission found that permanent forbearance was not justified under the second and third prongs of the § 10(a) forbearance test. On the second prong ("enforcement . . . is not necessary for the protection of consumers"), the Commission reasoned that the market was developing as anticipated in the 1999 *Temporary Forbearance Order*, such that more consumers viewed their wireless phones as potential substitutes for their wireline phones, and that wireless service was competing directly with wireline service. *Id.* at 14,978-79. "As these trends continue, and as wireless service subscribers increase the frequency with which they give out their mobile telephone number, we anticipate that an increasing number of consumers will be reluctant to change wireless service providers unless they can keep the same number," and "will find themselves forced to stay with carriers with whom they may be dissatisfied because the cost of giving up their wireless phone number in order to move to another carrier is too high." *Id.* at 14,979-80. The Commission thus concluded that "a permanent forbearance from the [number portability] requirements for CMRS carriers is not consistent with the protection of consumers." *Id.* at 14,978.

On the third prong ("forbearance . . . is consistent with the public interest"), the Commission worried about market failure, reasoning that

> it is unlikely for the entire industry to agree to move to wireless [number portability] voluntarily. In addition, there may be economic disincentives for any individual carrier to be the first to voluntarily adopt full [number portability], which would provide its subscribers the flexibility to switch to a different carrier while retaining their current phone numbers. This is because, absent the implementation of full [number portability] by other wireless carriers, that carrier could not gain any new wireless customers from the non-participating wireless carriers. As a result, to ensure that consumers have the ability to switch carriers while retaining their phone numbers,

> we must require wireless carriers to implement [number portability].

*Id.* at 14,981. The Commission again emphasized the trend of consumers' use of wireless phones as their main phones, and the importance of wireless number portability to eliminating a disincentive to switch among wireless carriers based on competitive factors such as price, service, and coverage. *Id.* Thus, the Commission deemed permanent forbearance inconsistent with the public interest.

Although the Commission denied permanent forbearance, it found that further extension of the implementation deadline to November 24, 2003 was warranted, to provide adequate time to resolve technical and non-technical issues. *See id.* at 14,981-83.

This petition for review of the Commission's *Order* followed.

## II. ANALYSIS

### A. Standard of Review

In reviewing the Commission's construction of the test for forbearance under § 10(a), we are governed by the principles enunciated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). In *Chevron*, the Court held that, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842-43. If "Congress has not directly addressed the precise question at issue," and the agency has acted pursuant to an express or implicit delegation of authority, the agency's interpretation of the statute is entitled to deference so long as it is "reasonable" and not otherwise "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843-44. *See also Motion Picture Ass'n of Am., Inc. v. FCC*, 309 F.3d 796, 801 (D.C. Cir. 2002).

The Commission's *Order* is also subject to review under the traditional "arbitrary and capricious" standard. As the Supreme Court explained in *Motor Vehicle Manufacturers*

*Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983),

> [t]he scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, [419 U.S. 281, 285 (1974) ]; *Citizens to Preserve Overton Park v. Volpe*, [401 U.S. 402, 416 (1971) ].

### B. Timeliness of Challenge to FCC's Statutory Authority to Impose Number Portability

In conjunction with their petition for review of the FCC's decision not to forbear from enforcing the wireless number portability requirement, petitioners also seek to challenge the Commission's statutory authority to impose wireless number portability. *See* Petitioners' Br. 35-36. We hold that the question of the Commission's statutory authority to impose wireless number portability is not properly before this court.

First, petitioners' challenge to the Commission's statutory authority is nothing more than a challenge to the underlying regulations, promulgated in 1996, requiring wireless carriers to provide number portability. *See First Report and Order*, 11 F.C.C.R. 8352; *First Reconsideration Order*, 12 F.C.C.R. 7236. The Commission specifically addressed the issue of its authority to require wireless number portability in the *First Report and Order*, 11 F.C.C.R. at 8433, and in the *First Reconsideration Order*, 12 F.C.C.R. at 7315-16. Petitioners challenged the Commission's authority to require wireless

number portability in their petition for review of the *First Report and Order* and the *First Reconsideration Order*, thereby satisfying the statutory requirement that a petition for judicial review of a final order of the Commission must be filed "within 60 days after its entry." *See* 28 U.S.C. § 2344; *see also* 47 U.S.C. § 402(a). However, petitioners later voluntarily dismissed their petition for review, *see* Joint Motion for Dismissal, JA 1053-58, and did not refile their petition within the statutory time limit. Petitioners' challenge to the Commission's authority to promulgate the underlying regulations in the instant case is therefore untimely.

It does not matter whether the Commission agreed, in settling the case before the Tenth Circuit, not to object to the presentation of the same issues and arguments in any future proceeding involving review of an order concerning wireless number portability. *See id.* at 1055. The 60-day statutory deadline is jurisdictional. *Natural Res. Def. Council v. Nuclear Regulatory Comm'n*, 666 F.2d 595, 601-02 (D.C. Cir. 1981); *see Freeman Eng'g Assocs., Inc. v. FCC*, 103 F.3d 169, 177 (D.C. Cir. 1997) ("An untimely appeal *must* be dismissed for lack of jurisdiction") (citation and internal quotation marks omitted; emphasis in original). And this court is not bound by any agreement between the parties that purports to abrogate this jurisdictional requirement.

We recognize that statutory time limits are not always inviolate. For example, there are at least two notable circumstances in which the court will entertain challenges beyond a statutory time limit to the authority of an agency to promulgate a regulation: (1) following enforcement of the disputed regulation; and (2) following an agency's rejection of a petition to amend or rescind the disputed regulation. *See NLRB Union v. FLRA*, 834 F.2d 191, 195-97 (D.C. Cir. 1987). Neither of those situations is present here. The Commission has not yet enforced the wireless number portability requirement against petitioners. When the November 24, 2003 enforcement date arrives, if the Commission in fact enforces the regulation against petitioners, then petitioners may be able to challenge the underlying regulation as applied to them. But because the 60-day statutory limitations period

has expired, petitioners cannot challenge the regulation before it is enforced against them.

In short, the challenge to the FCC's authority to impose wireless number portability is untimely. We therefore dismiss this claim.

## C.  Forbearance

The statutory test for forbearance under § 10(a) has three prongs that must all be satisfied before the Commission is obligated to forbear from enforcing a regulation or a statutory provision: (1) "enforcement . . . is not necessary to ensure that the charges, practices, classifications, or regulations . . . are just and reasonable and are not unjustly or unreasonably discriminatory"; (2) "enforcement . . . is not necessary for the protection of consumers"; and (3) "forbearance . . . is consistent with the public interest." *See* 47 U.S.C. § 160(a). The three prongs of § 10(a) are conjunctive. The Commission could properly deny a petition for forbearance if it finds that any one of the three prongs is unsatisfied. Because we conclude that the Commission did not err in finding that the second prong was not met, it is unnecessary for us to address the FCC's decision with respect to the other two prongs.

Petitioners' challenge to the Commission's application of § 10(a)'s second prong centers on the meaning of statutory term "necessary." Petitioners contend that, in applying the second prong ("not necessary for the protection of consumers"), the Commission erred in failing to construe "necessary" to mean "absolutely required," "indispensable," or "essential." Petitioners' position is that the Commission must forbear from enforcement of its wireless number portability rules if enforcement is not *absolutely required* to protect consumers. *See* Petitioners' Br. 23-28. Petitioners argue that enforcement of the wireless number portability rules is not absolutely required to protect consumers, because, in petitioners' view, the rate of wireless consumers switching carriers is high even absent number portability. *See id.* at 26.

Petitioners contend that this reasoning is compelled by the plain meaning of the adjective "necessary," which, they point

out, often is defined as "absolutely required," "indispensable," or "essential." *See* Petitioners' Br. 23 (citing MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 744 (10th ed. 2000)). But dueling over dictionary definitions is pointless, for it fails to produce any plain meaning of the disputed word. *See* A. Raymond Randolph, *Dictionaries, Plain Meaning, and Context in Statutory Interpretation*, 17 HARV. J.L. & PUB. POL'Y 71 (1994). If we focus on legal contexts, BLACK'S LAW DICTIONARY 1052 (7th ed. 1999) defines "necessary and proper" to mean "[b]eing appropriate and well adapted to fulfilling an objective." For example, in the context of the Necessary and Proper Clause of the Constitution, U.S. CONST. art. I, § 8, cl. 18, the Supreme Court "long ago rejected the view that the Necessary and Proper Clause demands that an Act of Congress be '"*absolutely* necessary"'" to the exercise of an enumerated power. *See McCulloch v. Maryland*, 4 Wheat. 316, 414-15 (1819). Rather, it suffices that "a statute is 'conducive to . . .' and is 'plainly adapted' to [its] end, *id.*, at 417, 421." *Jinks v. Richland County*, 123 S. Ct. 1667, 1671 (2003) (emphasis in original). Hence the word "necessary" does not always mean absolutely required or indispensable.

Indeed, there are many situations in which the use of the word "necessary," in context, means something that is done, regardless of whether it is indispensable, to achieve a particular end. *See* Randolph, *supra*, at 72-74. For example, "necessary improvement" is defined as "an improvement to property that is made to prevent its deterioration." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1511 (1976). The point is simple: it is crucial to understand the context in which the word is used in order to comprehend its meaning. *See McCulloch*, 17 U.S. (4 Wheat.) at 414 (stating that the word "necessary" "admits of all degrees of comparison; and is often connected with other words, which increase or diminish the impression the mind receives of the urgency it imports").

In *AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366, 390 & n.11 (1999), the Supreme Court applied a narrow construction of "necessary" in reviewing a challenge to the Commission's interpretation of the term in 47 U.S.C. § 251(d)(2).

This court followed suit in *GTE Service Corp. v. FCC*, 205 F.3d 416, 423 (D.C. Cir. 2000), in reviewing the Commission's interpretation of "necessary" in 47 U.S.C. § 251(c)(6), holding that,

> [a]s is clear from the Court's judgment in *Iowa Utilities Board*, a statutory reference to "necessary" must be construed in a fashion that is consistent with the ordinary and fair meaning of the word, *i.e.*, so as to limit "necessary" to that which is required to achieve a desired goal.

It is significant that *GTE Service Corp.* applied a definition of "necessary" – "that which is required to achieve a desired goal" – that does not foreclose a particular means to an end merely because other means are hypothetically available to achieve the desired end. This is entirely understandable, because a definition of "necessary" that embraces only a narrow construction in all contexts makes no sense. For example, if a house foundation is weakening due to excess water on the property, and the goal of a home improvement project is to eliminate the water problem, viable solutions might include rebuilding the foundation to make it strong enough to withstand any water, digging around the house to divert water away from the house, or adding sump pumps to the house interior to expel water excesses. A solution is "required to achieve the desired goal," thus "necessary." None of the solutions is "indispensable" in the sense that it is absolutely required, because either of the other two might do as well to achieve the desired goal. But the selection of any one of the solutions is "necessary" to achieve the desired goal. Thus, the solution that is selected is necessary to achieve the desired goal.

"[C]ourts have frequently interpreted the word 'necessary' to mean less than absolutely essential, and have explicitly found that a measure may be 'necessary' even though acceptable alternatives have not been exhausted." *Natural Res. Def. Council v. Thomas*, 838 F.2d 1224, 1236 (D.C. Cir. 1988) (citing *FTC v. Rockefeller*, 591 F.2d 182, 188 (2d Cir. 1979) (finding that a subpoena could be "necessary" to an FTC

investigation even though the agency had not pursued "reasonably available alternatives")). Context is relevant to the interpretation of the term "necessary." The "meaning varies with context," *Thomas*, 838 F.2d at 1237, and a dictionary definition by no means tells us what "necessary" means in every statutory context.

We do not read *Iowa Utilities Board* or *GTE Service Corp.* to suggest that "necessary" has precisely the *same* meaning in every statutory context, or that context is irrelevant to the meaning of "necessary." It is also noteworthy that neither *Iowa Utilities Board* nor *GTE Service Corp.* involved the application of the forbearance provision of the 1996 Act. Rather, those cases involved disputes between LECs and new carriers seeking market access. The 1996 Act fundamentally restructures local telephone markets, ending the monopolies that States historically granted to LECs and subjecting incumbent LECs to a host of duties intended to facilitate market entry, including the obligation under 47 U.S.C. § 251(c) to share their networks with competitors. A requesting carrier can obtain such shared access by purchasing local telephone services at wholesale rates for resale to end users, by leasing elements of the incumbent's network "on an unbundled basis," and by interconnecting its own facilities with the incumbent's network.

In *Iowa Utilities Board*, the Supreme Court held that the FCC did not adequately consider the "necessary and impair" standard under § 251(d)(2) when it gave requesting carriers blanket access to incumbent carriers' network elements. The FCC's rule implementing § 251(d)(2) implicitly regarded the "necessary" standard as having been met regardless of whether the requesting carriers could obtain the disputed proprietary elements from a source other than the incumbent, and it regarded the "impairment" standard as having been met if an incumbent's failure to provide access to a network element would decrease the quality, or increase the cost, of the service a requesting carrier seeks to offer, compared with providing that service over other unbundled elements in the incumbent LEC's network. The Court held that the FCC could not, consistent with the statute, blind itself to the

availability of elements outside the incumbent's network in implementing the "necessary and impair" standard. The Court also held that the FCC's assumption that *any* increase in cost (or decrease in quality) imposed by denial of a network element renders access to that element "necessary," and causes the failure to provide that element to "impair" the entrant's ability to furnish its desired services, was simply not in accord with the ordinary and fair meaning of those terms. Rather, the Court held, § 251(d)(2) requires the FCC to determine on a rational basis *which* network elements must be made available, taking into account the 1996 Act's objectives and giving some substance to the "necessary" and "impair" requirements. Similarly, in *GTE Service Corp.*, the court was concerned that a "broad[ ] construction of 'necessary' under § 251(c)(6) might result in an *unnecessary* taking of private property." 205 F.3d at 423 (emphasis in original).

We face no such concerns in this case. This case does not involve a dispute between incumbent LECs and their competitors over entry into local markets. Nor does it involve a challenge to an FCC rule that allegedly and impermissibly favors competitors at the expense of LECs. Rather, what is at issue here is a Commission denial of a request that it forebear from enforcing a rule that petitioner claims is not necessary for the protection of consumers.

In the instant forbearance context, application of petitioners' definition of "necessary" would lead to an absurd result, because it is difficult to imagine a regulation whose enforcement is *absolutely required* or *indispensable* to protect consumers. Indeed, when counsel for petitioners was questioned about this, he could not give a viable example of a "necessary" regulation. None. In the forbearance context, we think that it would defy common sense to adopt a construction of "necessary" that results in a criterion that can never be met. What would follow is that every regulation would, strictly speaking, be "not necessary for the protection of consumers." The second prong would be a nullity. The Commission always would be required to forbear from enforcement (provided that the other two prongs of § 10(a) are satisfied).

Adopting petitioners' rigid construction of "necessary" in the forbearance context would result in a further absurdity. Under petitioners' view, the FCC, which is permitted to promulgate regulations which are subject to limited review under an arbitrary and capricious standard, could be required, the very next day, to forbear from enforcement of the same regulations, because the unattainable criterion of "necessary" cannot be met. In fact, under petitioners' view of § 10(a), the Commission must also forbear from enforcement of all *statutory provisions* (not only agency regulations) that are not "absolutely required" or "indispensable." We can find no evidence that this is what Congress intended when it enacted § 10(a), especially when petitioners' definition of "necessary" admits of no obvious applications.

This context informs our view of the term "necessary" here. In this context, we cannot conclude that, in using the term in the forbearance statute, Congress has "directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. Petitioners cannot prevail under *Chevron* Step One because the meaning of the term in this statutory context is certainly not plain in the way that petitioners contend. *Cf. United States v. Consumer Health Servs. of Am.*, 108 F.3d 390, 396 (D.C. Cir. 1997) (finding that it was "not entirely clear what Congress meant by 'necessary'" in 42 U.S.C. § 1395g(a), and turning to *Chevron* Step Two). Congress did not speak clearly by using the term "necessary" in the forbearance statute. Thus, we cannot conclude that "necessary" clearly means "absolutely required" or "indispensable."

Nor can petitioners prevail under *Chevron* Step Two. On the record at hand, and in light of the deference owed to the agency under *Chevron* Step Two, we find the Commission's interpretation of "necessary" eminently reasonable. In the forbearance context, for the reasons already stated, it is reasonable to construe "necessary" as referring to the existence of a strong connection between what the agency has done by way of regulation and what the agency permissibly sought to achieve with the disputed regulation. In other words, the number portability rules are required to achieve the desired goal of consumer protection. That is essentially

the definition of "necessary" that the Commission embraced and applied in its *Order*. We therefore find that deference to the agency's reasonable interpretation under *Chevron* Step Two is appropriate.

Under this reasonable interpretation of "necessary," the Commission concluded that the second prong of § 10(a), 47 U.S.C. § 160(a) ("enforcement . . . is not necessary for the protection of consumers"), was not satisfied, and that forbearance from the Commission's number portability rules was therefore not justified. We find that this conclusion also satisfies arbitrary and capricious review. Evidence that the rates of switching between wireless carriers are high even without number portability does not demonstrate that number portability is not necessary for the protection of consumers. On the record before the agency, it was reasonable for the FCC to conclude that wireless consumers would switch carriers at even higher rates if they could keep their phone numbers. The current high switching rate does no more than establish that some consumers are willing to pay the additional costs associated with changing numbers in order to change service providers. *See* Respondent's Br. 26.

The simple truth is that having to change phone numbers presents a barrier to switching carriers, even if not a total barrier, since consumers cannot compare and choose between various service plans and options as efficiently. As the Commission reasoned, consumers "will find themselves forced to stay with carriers with whom they may be dissatisfied because the cost of giving up their wireless phone number in order to move to another carrier is too high." *Order*, 17 F.C.C.R. at 14,980.

Petitioners also contend that the word "protect" in the second prong of § 10(a) should be given a strict interpretation, to mean "prevent injury, damage, or loss" rather than "benefit" or "enhance." Petitioners' Br. 26-28. We do not take this argument seriously, and thus do not dwell on it, because it is obvious that any regulation that frees consumers from staying with carriers with whom they are dissatisfied affords them protection.

Finally, petitioners make much of the so-called inconsistency between the *Order* under review and the Commission's 1999 *Temporary Forbearance Order*, 14 F.C.C.R. 3092, in which the Commission found the three prongs of § 10(a) satisfied and granted *temporary* forbearance from enforcement until November 24, 2002. In the forbearance decision at issue here, the Commission examined new record evidence and reached a reasonable conclusion that § 10(a) was not satisfied for the purpose of *permanent* forbearance. The two orders are perfectly consistent in rejecting permanent forbearance. The Commission's 1999 *Temporary Forbearance Order* rejected the arguments for permanent forbearance based on the Commission's projection that wireless phones increasingly would become potential substitutes for wireline phones, and that consumers accordingly would become more invested in keeping their wireless phone numbers. Three years later, the Commission's *Order* confirmed that the predicted trend in fact came to pass and would continue, and again rejected permanent forbearance. There is no inconsistency between the two orders.

The Commission reasonably concluded that the second prong of § 10(a), 47 U.S.C. § 160(a), was not satisfied, such that permanent forbearance from the Commission's number portability rules was not justified.

## III. Conclusion

For the foregoing reasons, we dismiss the petition for review with respect to the Commission's statutory authority, and deny the petition for review with respect to the Commission's forbearance decision.