GREGORY, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s conclusion that preclusive effect should only be given to factual findings that were necessary to, rather than supportive of, the judgment affirmed by the Court of Appeals for the District of Columbia. I respectfully dissent, however, from the majority’s rigid construction of the term “necessary.” In my view, this rigid construction of “necessary” is inconsistent with both the purposes of collateral estoppel and the contextual approach taken by the Supreme Court and our sister circuits when defining “necessary.”
I
The majority construes “necessary” to mean critical and essential. Ante at 325. In so doing, the majority cites to and relies on dictionary definitions of “necessary.” Id. at 327. As the Supreme Court has noted, however, dictionary definitions provide little guidance as to the proper construction of “necessary.” In the landmark case of McCulloch v. Maryland, the Court expressly held that the term “necessary” must be construed in accordance with the context in which it is used:
It is essential to just construction, that many words which import something excessive, should be understood in a more mitigated sense — in that sense which common usage justifies. The word “necessary” is of this description. It has not a fixed character, peculiar to itself. It admits of all degrees of comparison; and is often connected with other words, which increase or diminish the impression the mind receives of the urgency it imports. A thing may be necessary, very necessary, absolutely or indispensably necessary. To no mind would the same idea be conveyed by these several phrases.
17 U.S. (4 Wheat.) 316, 414, 4 L.Ed. 579 (1819)(emphasis added). In McCulloch, the Supreme Court considered whether the Necessary and Proper Clause required that the incorporation of a bank be absolutely necessary to the exercise of Congress’s enumerated powers. Id. at 401. In rejecting such a rigid construction of “necessary,” the Court held that the Necessary and Proper Clause only requires that a statute be conducive to and plainly adopted to serve the end for which it was *330 enacted. Id. at 414, 417, 421. The Supreme Court has since reaffirmed this construction of the Necessary and Proper Clause. In Jinks v. Richland County — a decision issued last term — the Court held that 42 U.S.C. § 1367(d) satisfies the requirements of the Necessary and Proper Clause because it is “ ‘conducive to the due administration of .justice’ ... and is ‘plainly adapted’ to that end.” 538 U.S. 456, 123 S.Ct. 1667, 1671, 155 L.Ed.2d 631 (2003). In so holding, the Court noted: “[W]e long ago rejected the view, that the Necessary and Proper Clause demands that an Act of Congress be ‘absolutely necessary’ to the exercise of an enumerated power.” Id.
Further illustrating the Supreme Court’s contextual approach for construing “necessary” is its tax law jurisprudence. Rather than relying upon dictionary definitions, the Court has construed “necessary” in a manner that is best suited for this highly technical area of law. For instance, in determining whether an expense can be properly deducted as an “ordinary” and “necessary” business expense, the Court has “consistently construed the term ‘necessary’ as imposing only the minimal requirement that the expense be'appropriate and helpful’ for ‘the development of the [taxpayer’s] business.’ ” Comm’r v. Tellier, 383 U.S. 687, 689, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966)(quoting Welch v. Hel-vering, 290 U.S. 111, 113, 54 S.Ct. 8, 78 L.Ed. 212 (1933)). Such a construction reflects the Court’s understanding that a correct construction of “necessary” cannot turn on dictionary definitions.
II
A number of our sister circuits have followed the Supreme Court’s contextual approach when construing “necessary” and have thus declined to mechanically apply dictionary definitions of “necessary.” The D.C. Circuit, for example, has expressly stated: “[I]t is crucial to understand the context in which [“necessary”] is used in order to. comprehend its meaning.” Cellular Telecomm. & Internet Ass’n v. FCC, 330 F.3d 502, 510 (D.C.Cir.2003). In Cellular Telecomm. & Internet Ass’n, the D.C. Circuit considered whether the FCC’s enforcement of wireless number portability rules was “necessary” for the protection of consumers. Id. at 504. In construing the term “necessary,” the D.C. Circuit noted that “a dictionary definition by no means tells us what ‘necessary’ means in every statutory context,” id. at 510, because “the word ‘necessary’ does not always mean absolutely required or indispensable.” Id. at 509-10. The court further observed: “ ‘[C]ourts have frequently interpreted the word ‘necessary’ to mean less than absolutely essential, and have explicitly found that a measure may be ‘necessary’ even though acceptable alternatives have not been exhausted.’ ” Id. at 510 (quoting Natural Res. Def. Council v. Thomas, 838 F.2d 1224, 1236 (D.C.Cir.1988)). Accordingly, the D.C. Circuit held that the FCC need not show that enforcement of its wireless number portability rules “is absolutely required or indispensable to protect consumers.” Id. at 511.
Similarly, the Second Circuit noted in FTC v. Rockefeller that the use of the term “necessary” does not automatically render something “‘absolutely needed’ or ‘inescapable’ ” because “ ‘necessary1 is not always used in its most rigid sense.” 591 F.2d 182, 188 (2d Cir.1979). The specific issue before the Second Circuit in Rockefeller was whether an investigation conducted by the FTC fell under a statutory provision authorizing the FTC to “ ‘gather and compile information’ from, and to ‘investigate,’ banks ‘to the extent that such action is necessary to the investigation’ of non-banking targets.” Id. (quoting Pub.L. 93-153 § 408(e), 87 Stat. 592)(emphasis *331 added). Given its more flexible construction of “necessary,” the court held that an ancillary investigation of a bank is “necessary” if it “arise[s] reasonably and logically out of the main investigation” of nonbank-ing targets. Id. In so holding, the court rejected the argument that “ ‘necessary’ means that the [FTC] must pursue all other ‘reasonably available alternatives’ before engaging in the ancillary investigation.” Id.
More importantly, for present purposes, two of our sister circuits have expressly declined to adopt a rigid construction of “necessary” in the context of collateral es-toppel. In Hoult v. Hoult, the First Circuit held that “a finding is ‘necessary’ if it was central to the route that led the fact-finder to the judgment reached, even if the result ‘could have been achieved by a different, shorter and more efficient route.’ ” 157 F.3d 29, 32 (1st Cir.l998)(quoting Commercial Assocs. v. Tilcon Gammino, Inc., 998 F.2d 1092, 1097 (1st Cir.l993))(emphasis added). Similarly, the Federal Circuit has stated:
At the outset, [when determining the applicability of collateral estoppel] it is important to note that the requirement that a finding be “necessary” to a judgment does not mean that the finding must be so crucial that, tuithout it, the judgment could not stand. Rather, the purpose of the requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation.
Mother’s Rest. Inc. v. Mama’s Pizza, Inc., 723 F.2d 1566, 1571 (Fed.Cir.1983)(empha-sis added). Two circuits have thus concluded that a finding need not be indispensable to a prior judgment in order to be deemed “necessary” to that judgment. A conclusion which is directly in conflict with the one reached by the majority today.
Ill
Despite this ease law, the majority adopts a rigid construction of “necessary,” whereby preclusive effect is only accorded to findings deemed indispensable to a prior judgment. As previously noted, the majority holds that findings are “necessary” to a prior judgment and thereby entitled to preclusive effect if they are critical and essential to that judgment. Random House Webster’s College Dictionary 317 (2000)(defining “critical” to mean of essential importance, indispensable); id. at 451 (defining “essential” to mean absolutely necessary, indispensable); Webster’s Third New International Dictionary 538 (1981)(defining “critical” to mean indispensable); id. at 777 (defining “essential” to mean indispensable). The majority concludes that such a rigid construction is required due to the potential unfairness that can result from the application of offensive collateral estoppel. Ante at 326-327. While it is true that we must cautiously apply the doctrine of offensive collateral estoppel, we must also take care to construe the requirements for this doctrine in a manner that furthers its purpose. As noted by the Supreme Court, offensive and defensive collateral estoppel serve “to ‘relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.’ ” United States v. Mendoza, 464 U.S. 154, 158, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984)(quoting Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). The majority’s rigid construction of “necessary,” however, runs contrary to these purposes. Indeed, the majority’s rigid construction of “necessary” frustrates these purposes. Very few findings, while a material element of a prior judgment, *332 can be considered indispensable. Consequently, under the majority’s construction of “necessary,” litigants and courts will be forced to reconsider an issue that constituted or was a material element of a prior judgment even though that issue was fully contested and resolved in a previous proceeding.
For instance, a finding during a dispute concerning the amount of a contractor’s lien on real property that the contract in question contains a provision placing a limit on the contractor’s compensation is not indispensable because it does not determine the actual amount of thé contractor’s lien. Nonetheless, such a finding is a material element of the judgment because it establishes that the compensation to which the contractor is entitled cannot exceed a certain amount. Accordingly, the parties should be precluded in a subsequent suit from relitigating whether the contract in question placed a limit on the contractor’s compensation if this issue was fully and fairly contested during the initial proceeding. Allowing this issue to be relitigated defeats the purposes of collateral estoppel, which, as previously noted, are “to ‘relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.’ ” Id.

W

As a means of drawing an appropriate balance between the costs and purposes of offensive collateral estoppel, I believe a finding should be deemed “necessary” to a prior judgment if it concerns a matter that was “distinctly put in issue and directly determined by a court of competent jurisdiction,” Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)(quoting S. Pac. R. Co. v. United States, 168 U.S. 1, 48-49, 18 S.Ct. 18, 42 L.Ed. 355 (1897)), and a material element of the judgment. Although less rigid than the construction adopted by the majority, this construction of “necessary” offers the same protection against the potential unfairness of offensive collateral estoppel with which the majority is concerned while better serving the purposes of this doctrine. By requiring that a matter be directly put in issue, determined and a material element of a prior judgment, this construction of “necessary” prevents nonessential dicta and ancillary findings from being accorded preclusive effect.
With respect to the present case, application of this less rigid construction of “necessary” would not unfairly prejudice Microsoft, the party against whom collateral estoppel is being asserted. Microsoft had sufficient incentive to vigorously contest every issue raised during the government’s antitrust case given that its continued existence as a single entity was directly at issue. Moreover, Microsoft understood that the findings rendered in the government’s antitrust case would determine, in large part, whether private parties would commence civil actions against Microsoft. Accordingly, Microsoft should be precluded from relitigating issues that were distinctly raised, determined and a material element of the judgment affirmed by the D.C. Circuit.
V
For the foregoing reasons, I concur in the conclusion that preclusive effect should only be accorded to factual findings that were “necessary” to the judgment affirmed by the D.C. Circuit. I respectfully dissent, however, from the majority’s determination that a factual finding must be indispensable to a prior judgment in order to be “necessary” to that judgment. In my view, factual findings made during the course of a proceeding are “necessary” to the judgment rendered in that proceeding *333 if they concern a matter that was “distinctly put in issue and directly determined,” Montana, 440 U.S. at 153, 99 S.Ct. 970, and a material element of that judgment. Accordingly, on remand, I believe preclu-sive effect should be accorded to factual findings that meet the construction of “necessary” as set forth in my opinion.