Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 15, 2003   Decided February 13, 2004

No. 02-1262

CELLCO PARTNERSHIP, D/B/A VERIZON WIRELESS,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

No. 03–1080

VERIZON TELEPHONE COMPANIES, ET AL.,
PETITIONERS

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

AT&T CORPORATION AND
CINGULAR WIRELESS LLC,
INTERVENORS

————

On Petitions for Review of an Order of the
Federal Communications Commission

————

*Andrew G. McBride* argued the cause in No. 02–1262 for petitioner. With him on the brief were *Eve Klindera Reed* and *John T. Scott III*. *Lewis A. Tollin* entered an appearance.

*Richard K. Welch,* Counsel, Federal Communications Commission, argued the cause in No. 02–1262 for respondents. On the brief were *Robert H. Pate III*, Assistant Attorney General, *Robert B. Nicholson* and *Robert J. Wiggers*, Attorneys, *John A. Rogovin*, General Counsel, *John E. Ingle*, Deputy Associate General Counsel, and *Laurel R. Bergold*, Counsel.

*Andrew G. McBride* argued the cause in No. 03–1080 for petitioners. With him on the briefs were *Eve Klindera Reed, William P. Barr, Michael E. Glover* and *Edward H. Shakin*.

*Richard K. Welch,* Counsel, Federal Communications Commission, argued the cause in No. 03–1080 for respondents. With him on the brief were *Robert H. Pate III*, Assistant Attorney General, U.S. Department of Justice, *Catherine G. O'Sullivan* and *Nancy C. Garrison*, Attorneys, *John A. Rogovin*, General Counsel, Federal Communications Commission, *John E. Ingle*, Deputy Associate General Counsel, and *Laurel R. Bergold*, Counsel. *Laurence N. Bourne*, Counsel, entered an appearance.

*Peter H. Jacoby, David W. Carpenter, David L. Lawson* and *James P. Young* were on the brief in No. 03–1080 for

intervenor AT&T Corporation. *Mark C. Rosenblum* entered an appearance.

Before: RANDOLPH, ROGERS and GARLAND, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Section 11 of the Telecommunications Act of 1996 ("1996 Act") requires the Federal Communications Commission, upon biennial review, to repeal or modify any regulation that is "no longer necessary in the public interest as the result of meaningful economic competition between providers of such service." 47 U.S.C. § 161 (2002). Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") and Verizon Telephone Companies ("Verizon") petition for review of the Commission's Biennial Regulatory Reviews for 2000 and 2002, respectively, challenging the Commission's interpretation of § 11. Verizon Wireless also challenges the Commission's determination to retain two rules, 47 C.F.R. § 43.61(a) and § 63.21(i). Because of the chameleon-like nature of the term "necessary," whose meaning depends on its statutory context, we defer to the Commission's reasonable interpretation of § 11 as requiring it to apply the same standard used to adopt regulations under 47 U.S.C. § 201(b) to determinations of whether the regulations remain necessary in the public interest, and as imposing a time limit for Commission action only in § 11(a). Absent direction by Congress for a contrary interpretation, this interpretation provides internal statutory consistency, avoids absurd results, and is consistent with Congress' deregulatory purpose.

We therefore hold, upon rejecting the Commission's challenges to our jurisdiction and Verizon Wireless' standing, that because § 11 neither mandates the completion of the § 11(b) proceedings within the biennial year itself nor requires the Commission to repeal or modify every rule that the Commission does not determine to be absolutely essential, and thus does not impose a special evidentiary burden, the Commission provided an adequate explanation for retention of the two

rules challenged by Verizon Wireless. Accordingly, we deny Verizon Wireless' petition challenging the Commission's interpretation of § 11 and its determination to retain the two rules. In light of our disposition of Verizon Wireless' petition, we dismiss Verizon's petition for lack of jurisdiction.

## I.

The Communications Act of 1934 vested broad discretion in the Commission to regulate interstate and international wire and radio communications services. *See* 47 U.S.C. § 151. Among the responsibilities that Congress assigned to the Commission is the duty to "prescribe such rules and regulations as may be necessary in the public interest." *Id.* § 201(b). Its rulemaking authority thus extends to adopting rules so long as they "are not an unreasonable means" to achieve "permissible public-interest goals." *FCC v. Nat'l Citizens Comm. for Broad.*, 436 U.S. 775, 796 (1978).

In 1993, Congress amended the Communications Act to provide for the regulation of mobile communications services. *See* Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103–66, Title VI, § 6002(c), 107 Stat. 312 (1993). Commercial mobile radio services ("CMRS") were to be treated as common carriers subject to Title II of the Communications Act, which authorizes the Commission to ensure that carriers comply with applicable statutes. *See* 47 U.S.C. §§ 201–234. Congress, however, authorized the Commission to forbear from applying the provisions of Title II to such carriers upon determining, among other things, that forbearance "is consistent with the public interest." 47 U.S.C. § 332(c)(1)(A)(iii). In making that determination, the Commission must consider "whether the proposed [forbearance] regulation . . . will promote competitive market conditions, including the extent to which such regulation . . . will enhance competition among providers of commercial mobile services." *Id.* § 332(c)(1)(C). Congress further directed the Commission to review CMRS competitive market conditions and to analyze these conditions in its annual report. *Id.*

In 1996, by further amendment to the Communications Act, Congress enacted the Telecommunications Act of 1996 to ensure "a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector development of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition." S. Rep. No. 230, 104th Cong., 2d Sess. 1 (1996). Congress' broad policy was to be implemented through Commission rules, but the 1996 Act provided that it "shall not be construed to modify, impair or supersede" the Communications Act "unless expressly so provided." Pub. L. No. 104–104, § 601(c)(1), 110 Stat. 56 (1996), 47 U.S.C. § 152 note. *See also AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 378 n.5 (1999). The 1996 Act directed the Commission to expedite rulemaking in a variety of areas, for instance, local competition, universal service, and portability, *see* 47 U.S.C. §§ 251(d), 254, 251(b), but also vested the Commission with general forbearance authority, *id.* § 160. As pertinent here, the 1996 Act, Pub. L. No. 104–104, § 402, amended Title I of the Communications Act by adding a new § 11, which directed the Commission to undertake biennial assessments of its rules to determine whether they should be repealed or modified. 47 U.S.C. § 161. Section 11 provides:

> (a) Biennial review of regulations. In every even-numbered year (beginning with 1998), the Commission (1) shall review all regulations issued under this chapter in effect at the time of the review that apply to the operations or activities of any provider of telecommunications service; and (2) shall determine whether any such regulation is no longer *necessary in the public interest* as the result of meaningful economic competition between providers of such service.

> (b) Effect of determination. The Commission shall repeal or modify any regulation it determines to be no longer *necessary in the public interest.*

*Id.* (emphasis added).

Consequently, the Commission has undertaken a wholesale review of its regulations. Initially, the Commission's approach was to examine all its rules, not merely those that were specifically implicated in § 11, to determine whether repeal or modification might be appropriate. As a result of the 1998 Biennial Regulatory Review, the Commission initiated 32 proceedings to remove unnecessary regulatory burdens. *See* 2000 Biennial Regulatory Review Report, 16 FCC Rcd 1207, 1209 (2001) ("January 2001 Report").

The Commission also conducted a comprehensive review of its regulations in the 2000 Biennial Regulatory Review. With respect to each rule, staff reports considered the underlying purposes, the advantages and disadvantages, the impact of competitive developments, and whether modification or repeal should be recommended. *See* Public Notice, Biennial Review 2000 Staff Report Released, 15 FCC Rcd 21084 (2000). As a result of the 2000 Biennial Review, the Commission adopted the staff recommendations for modification or repeal of rules and released an updated staff report in light of comments on the initial staff report. *See* January 2001 Report, 16 FCC Rcd at 1207, 1210. The Commission also reported on the status of the deregulatory initiatives begun in the 1998 Review, *see, e.g.*, *id.* at 1207, 1218, 1224, construing § 11 not to require completion of such initiatives within the biennial year, *id.* at 1210, 1212–13. Following notice and comment, the Commission modified or repealed numerous regulations.

In the international service market, for instance, the Commission removed tariff regulation from interexchange services provided by non-dominant carriers, *see* Policy and Rules Concerning the International, Interexchange Marketplace, 16 FCC Rcd 10647 (2001), adopted streamlined procedures for processing applications for submarine cable landing licenses, *see* Review of Commission Consideration of Applications under the Cable Landing License Act, 16 FCC Rcd 22167 (2001), reduced the notification period in the foreign carrier affiliation notification rule, and exempted certain classes of

foreign carriers from the prior notification requirement, *see* Rules and Policies on Foreign Participation in the U.S. Telecommunications Market, 15 FCC Rcd 18158 (2000). The Commission also determined to retain 47 C.F.R. § 43.61(a), which requires common carriers to report annually on their international telecommunications traffic, and 47 C.F.R. § 63.21(i) (as of August 8, 2002, § 63.21(h)), which requires providers of telecommunications services to give notice of their foreign affiliations in seeking Commission authorization to operate. *See* 2000 Biennial Regulatory Review Report and Order, Amendments of Parts 43 and 63 of the Commission's Rules, 17 FCC Rcd 11416, 11428–30, 11432–34 (2002) ("June 2002 Order"). The Commission invited comments on any additional international telecommunications services that should be modified or repealed as part of the 2002 Biennial Regulatory Review. *See* Public Notice, Commission Seeks Public Comment in 2002 Biennial Review of Telecommunications Regulations Within the Purview of the International Bureau, 17 FCC Rcd 18929 (2002).

In the 2002 Biennial Regulatory Review, the Commission formally addressed the meaning and scope of § 11, and the Commission's staff issued a series of reports reviewing and determining, as to each rule covered by § 11, whether the rule should be repealed or modified. The Commission, in a report released March 14, 2003, adopted the staff reports and its own Report, which incorporated its interpretation of § 11, stated its intention to issue notices of proposed rulemaking on the basis of the recommendations in the staff reports, and solicited applications for review of those recommendations. *See* 2002 Biennial Regulatory Review, 18 FCC Rcd 4726, 4740 (2003) ("March 2003 Report"), *available at* http://www.fcc.gov/biennial/.

## II.

The petitions for review represent another attempt by the same parties and the same counsel to elicit from this court a

narrow interpretation of the word "necessary" in the deregulatory context of the 1996 Act. In *Cellular Telecommunications & Internet Ass'n v. FCC*, 330 F.3d 502, 509 (D.C. Cir. 2003) ("*CTIA*"), Verizon Wireless failed to persuade the court in the related context of the Commission's forbearance authority, 47 U.S.C. § 160(a), to adopt such an interpretation. Now Verizon Wireless and Verizon seek in tandem petitions to elicit a narrow construction of "necessary" for § 11 purposes. Verizon does not challenge any particular regulation addressed by the 2002 Biennial Regulatory Review, but Verizon Wireless challenges the Commission's determinations in the 2000 Review to retain § 43.61(a) and § 63.21(i), ultimately maintaining that in view of the Commission's "utter[ ] disregard[ ] [of] a statutory mandate," the court should instruct the Commission to repeal the regulations. Verizon Wireless Br. at 14. We address the Commission's threshold challenges to Verizon's petition, and turn thereafter to the merits of Verizon Wireless' petition.

The Commission challenges both Verizon's standing to petition for review of an order setting forth the Commission's interpretation of § 11's requirements before it has been applied in a manner causing injury to Verizon, *see AT&T v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001); *Shell Oil Co. v. FERC*, 47 F.3d 1186, 1202–03 (D.C. Cir. 1995), and the court's jurisdiction to consider a non-final or non-ripe order, *see DRG Funding Corp. v. Sec'y of HUD*, 76 F.3d 1212, 1214 (D.C. Cir. 1996); *Franklin v. Massachusetts*, 505 U.S. 788, 796–97 (1992); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990); *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 735 (1998). We need not decide these questions. Verizon Wireless has standing to challenge the Commission's § 11 actions regarding § 43.61(a) and § 63.21(i). *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000); *Vt. Agency of Natural Res. v. United States*, 529 U.S. 765, 771 (2000). Because we decide the merits of Verizon Wireless' petition, Verizon's petition, which presents identical challenges to the Commission's interpretation of § 11, no longer presents a substantial federal question, and the court therefore lacks jurisdiction. *See Steel Co. v. Citi-*

*zens for a Better Env't*, 523 U.S. 83, 98 (1998); *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1167 (D.C. Cir. 2002).

To succeed on appeal, Verizon Wireless must demonstrate that the June 2002 Order is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this "highly deferential" standard of review, the court presumes the validity of agency action, *see, e.g.*, *Davis v. Latschar*, 202 F.3d 359, 365 (D.C. Cir. 2000), and must affirm unless the Commission failed to consider relevant factors or made a clear error in judgment, *see, e.g.*, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). One of the relevant factors is the 1996 Act's mandate in § 11 for biennial reviews to identify Commission regulations "no longer necessary in the public interest as the result of meaningful economic competition between providers of such service," followed by their repeal or modification. 47 U.S.C. § 161; *cf. Sinclair Broad. Group, Inc. v. FCC*, 284 F.3d 148, 159 (D.C. Cir. 2002); *CTIA*, 330 F.3d at 507–08. The standards of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), apply to the court's review of the Commission's interpretation of the Communications Act. *See CTIA*, 330 F.3d at 507. Thus, where Congress has spoken directly to the issue, our inquiry is at an end. *Chevron*, 467 U.S. at 842–43, 843 n.9. Where Congress' intent is unclear because the statute is silent or the language Congress has used is ambiguous, the question is whether the agency's interpretation is a permissible construction of the statute, *id.* at 843, and if it is, the court will defer to the implementing agency's reasonable interpretation. *See, e.g.*, *AT&T Corp.*, 525 U.S. at 397.

The two regulations whose retention Verizon Wireless challenges involve reporting requirements. The first, 47 C.F.R. § 43.61, requires all common carriers providing international service to file annual and quarterly reports with the Commission regarding such service, including a financial breakdown and a compilation of total minutes of calls involving international destinations. In the 2000 Biennial Review, in response to comments by Verizon Wireless, the Commission deter-

mined that quarterly reports by CMRS carriers affiliated with certain foreign carriers were no longer "necessary in the public interest." June 2002 Order, 17 FCC Rec at 11429. Because such carriers "have a *de minimis* amount of the switched resale international traffic," the Commission reasoned, they "are unlikely to be able to distort traffic on affiliated routes." *Id.* at 11429. However, the Commission retained the annual reporting requirement, despite comments from both Verizon Wireless and Cingular Wireless LLC ("Cingular") supporting its elimination because some of the same data was provided in other regulatory filings. Noting that both the "Commission and industry use the information provided in the reports to monitor compliance with the Commission's rules and policies," the Commission concluded that the proposed alternative would not provide information on minutes of use, which the Commission found to be "important." *Id.* at 11429–30. The Commission concluded: "Therefore, we find that these less burdensome [annual] reporting requirements continue to be in the public interest." *Id.* at 11430.

The second regulation, 47 C.F.R. § 63.21, requires notification to the Commission of foreign affiliations. Under the Communications Act, 47 U.S.C. § 214(a), the Commission is required to determine whether "public convenience and necessity" would be served by a carrier's acquisition, construction, or operation of telecommunications facilities, including international ones. To make that determination, the Commission requires all international carriers, except those 100% owned by another carrier with its own international § 214 authorization, *see* 47 C.F.R. § 63.21(i), to comply with the application process in § 63.21. During the 2000 Biennial Review, Cingular commented that the exemption in § 63.21(i), which exempts only wholly-owned subsidiaries, should be extended to international § 214-authorized carriers that hold a controlling interest, but not a complete ownership stake, in another carrier. The Commission declined to broaden the exemption, reiterating its finding when it adopted the exemption: " '[A] controlling interest that does not amount to 100–percent ownership may raise additional issues, such as addi-

tional foreign affiliations or minority ownership or beneficial interest by persons or entities who are barred from holding a Commission authorization.'" June 2002 Order, 17 FCC Rcd at 11433 (quoting 1998 Biennial Regulatory Review, Review of International Common Carrier Regulations, 14 FCC Rcd 4909, 4932–33 (1999)). It noted that subsidiaries not wholly owned by a § 214-authorized carrier might require more information for "national security, law enforcement, trade or foreign policy evaluation." *Id.* The Commission is required to notify the Secretaries of Defense and State when a carrier requests a § 214 authorization. *See* 47 U.S.C. § 214(b).

Verizon Wireless contends that a strict reading of the term "necessary" is required by the plain language, the statutory structure, and the purpose of § 11. The Commission, according to Verizon Wireless, failed to meet its burden under § 11 to demonstrate by specific record evidence that the retention of these two regulations in their present form is "necessary," for the Commission may not rely on its initial justification for adoption of a rule, but instead must provide evidence to demonstrate that its regulation remains essential in light of present market conditions. As support for its interpretation of § 11, Verizon Wireless relies on the dictionary definition of "necessary" as "essential" or "indispensable," *see Merriam Webster's Collegiate Dictionary* 774 (10th ed. 2000), and this court's opinions in *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1051 (D.C. Cir. 2002) ("*Fox I*"), and *Sinclair*, 284 F.3d at 152. In its view, such a strict reading is "the only reading consonant with the statutory purpose, which modified the previous regulatory model for telecommunications services to favor reliance upon competition and market forces." Verizon Wireless Reply Br. at 6. It maintains that the Commission's interpretation fails to recognize that § 11 is meant to cabin the Commission's authority and reduce regulation and not simply to restate the general administrative law obligation of the Commission to "carefully monitor the effects of its regulations and make adjustments where circumstances so require." *ACLU v. FCC*, 823 F.2d 1554, 1565 (D.C. Cir. 1987); *see Bechtel v. FCC*, 957 F.2d 873, 881 (D.C. Cir. 1992). Although the court rejected virtually all of the same argu-

ments in support of a narrow reading of "necessary" as meaning "absolutely essential" in the context of the Commission's forbearance authority under 47 U.S.C. § 161, *see CTIA*, 330 F.3d at 510–12, we reexamine them as applied to § 11.

When Congress enacted § 11, it did not specify what it meant by the key phrase at issue, "necessary in the public interest." In the 2000 Biennial Regulatory Review, the Commission did not address the meaning of this key phrase, but instead implicitly relied on the traditional meaning of the phrase as it had been interpreted in other sections of the Communications Act. *See, e.g.*, June 2002 Order, 17 FCC Rec at 11417. The Commission's formal discussion of its interpretation of § 11 appears in the 2002 Biennial Regulatory Review. Responding to comments on the appropriate interpretation of § 11, submitted in response to the Commission's public notice for suggestions for the 2002 Review, the Commission adopted an interpretation rejecting assertions that the plain meaning of § 11 requires the Commission to repeal any rule that it does not find to be absolutely essential. *See* March 2003 Report, 18 FCC Rcd at 4734. The court takes judicial notice of the March 2003 Report. *See Shuttlesworth v. Birmingham*, 394 U.S. 147, 157 (1969); *Nat'l Fire Ins. Co. of Hartford v. Thompson*, 281 U.S. 331, 336 (1930); *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Abraham*, 347 F.3d 315, 325 (D.C. Cir. 2003). An examination of the Commission's reasoning in construing its obligations under § 11 demonstrates that its interpretation is eminently reasonable.

The Commission has interpreted § 11 in light of the fact that the phrase "necessary in the public interest" in § 11(a) and (b) was the same phrase that Congress used in delegating rulemaking authority to the Commission. This is consistent with the general proposition that "identical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570 (1995). Under 47 U.S.C. § 201(b), the Commission can adopt rules upon finding that they advance a legitimate regulatory objective; it need not find that they are indispensable. *See* March 2003 Report, 18 FCC Rcd at 4733 n.31; *Nat'l Citizens*

*Comm.*, 436 U.S. at 796. In light of what the Commission correctly observed to be the ambiguous nature of the term "necessary," with its meaning dependent on its statutory context, the Commission concluded that Congress intended the phrase in § 11 to have the same meaning as in § 201(b). *See* March 2003 Report, 18 FCC Rcd at 4733–34. It rejected the view that Congress' use of a different verb ("may be" in § 201(b) and "is" in § 11) preceding § 11's clause "no longer in the public interest" required two different standards, reasoning that because both provisions required the Commission to make predictive judgments about the "necessity" of a rule, Congress would not have used the same phrase it had used in § 201(b) if it had intended § 11 to require a more stringent standard. *Id.* at 4733 n.32.

The Commission found further support for its interpretation in the phrase "no longer," which precedes the phrase "necessary in the public interest," as indicating that Congress intended the same standard to apply in § 11 as applies in § 201(b). *Id.* at 4733. The legislative history also offered support for the Commission's interpretation. *Id.* at 4732 (citing H.R. Conf. Rep. No. 104–458, at 185 (1996)). The Commission's interpretation, moreover, avoided absurd results where the Commission would adopt a regulation under § 201(b) as "necessary" only to be required to revoke it in the following year as "non-essential" under a more stringent "necessary" standard in § 11. *See* March 2003 Report, 18 FCC Rcd at 4734. Therefore, the Commission concluded that Congress intended the Commission to carry out the deregulatory purpose of the 1996 Act through the reevaluation of its rules "in light of current competitive market conditions to be sure that the conclusion that [it] reached in adopting the rule — that it was needed to further the public interest — remains valid." *Id.* at 4735.

The term "necessary" is a chameleon-like word whose meaning, as Verizon Wireless acknowledges, may be influenced by its context. The Supreme Court and this court have had occasion to construe the word "necessary" in the strict, dictionary definition sense that Verizon Wireless maintains applies to § 11. In *AT&T Corp.*, the Court rejected the

Commission's flexible construction of "necessary" in 47 U.S.C. § 251, which requires the Commission to consider whether access to a proprietary network element is "necessary" before requiring its unbundling; the Court held that the term "requires the [Commission] to apply *some* limiting standard, rationally related to the goals of the Act." 525 U.S. at 388. Similarly, in *GTE Service Corp. v. FCC*, 205 F.3d 416, 424 (D.C. Cir. 2000), the court rejected an expansive Commission interpretation of "necessary" in the context of requiring local exchange carriers to provide for collocation of equipment "necessary" for access to unbundled network elements at a carrier's premises, which is another part of § 251 closely related to that at issue in *AT&T Corp.* Both cases, however, addressed only the word "necessary," rather than the phrase "necessary in the public interest," and, as the Supreme Court observed in *AT&T Corp.*, the 1996 Act "is not a model of clarity. It is in many important respects a model of ambiguity or indeed even self-contradiction." *AT&T Corp.*, 525 U.S. at 397. Similarly, this court noted in *CTIA* that "necessary" is not language of plain meaning. *CTIA*, 330 F.3d at 509. Consequently, Verizon Wireless' position that "necessary" in § 11 must be interpreted to have a strict dictionary definition ignores both that Congress chose to leave the phrase unqualified except in ways that are supportive of the Commission's view that the same standard is to apply in § 11 as applies in § 201(b), *cf. AT&T Corp.*, 525 U.S. at 397, and that courts have long recognized that the term "necessary" does not always mean "indispensable" or "essential." *See, e.g.*, *Nat'l Citizens Comm.*, 436 U.S. at 795–96; *Armour & Co. v. Wantock*, 323 U.S. 126, 129–30 (1944); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 413 (1819); *Indep. Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 640 (D.C. Cir. 2000); *CTIA*, 330 F.3d at 510. Adoption of Verizon Wireless' position, then, "would give an unwarranted rigidity to the application of the word 'necessary,' which has always been recognized as a word to be harmonized with its context." *Armour & Co.*, 323 U.S. at 129–30.

To the extent Verizon Wireless contends that the Commission ignores the deregulatory purpose animating the 1996

Act, Verizon Wireless ignores both what the Commission has said in interpreting § 11 and what the Commission has done in implementing § 11 since initiating the biennial reviews in 1998. In the 2000 and 2002 Biennial Regulatory Reviews, the Commission acknowledged the deregulatory goal of the 1996 Act and its obligation to determine whether its rules were necessary in light of current market conditions. *See* Public Notice, Biennial Review 2000 Staff Report Released, 15 FCC Rcd 21084 (2000); March 2003 Report, 18 FCC Rcd at 4735. While rejecting Verizon's comment that § 11 imposed a special burden to support any finding that a rule remained necessary and that absent such evidence the rule must immediately be repealed, the Commission agreed that where § 11's conditions are met, § 11 creates a presumption in favor of repealing or modifying covered rules. *See* March 2003 Report, 18 FCC Rcd at 4735. In addition, the staff reports adopted by the Commission in the 2000 and 2002 Biennial Reviews incorporate the competitive market approach in examining whether a regulation "is no longer necessary." Indeed, the Commission's actions in response to the Biennial Reviews indicate that § 11 is working as Congress intended. *See, e.g.*, *id.* at 4736–37; H.R. Conf. Rep. No. 104–458, at 185; *see also* January 2001 Report, 16 FCC Rcd at 1209.

Nothing in our opinions in *Fox I* and *Sinclair* is to the contrary. These cases arose in the regulatory context of § 202(h) and (g), governing broadcast ownership requirements. Pretermitting whether the different regulatory context suffices to distinguish the statutory challenge in the instant petitions, neither *Fox I* nor *Sinclair* adopted a controlling definition of "necessary," much less the position that § 11 embodies a presumption in favor of deregulation. Although *Sinclair* states that only those regulations "necessary in the public interest" may be retained, 284 F.3d at 159, it cited the recently decided opinion in *Fox I*, 280 F.3d at 1048, for that proposition and did not itself define "necessary." In *Fox I*, the court, in addressing remedies available for the court to require, interpreted "necessary" to mean that "a regulation should be retained only insofar as it is necessary in, not merely consonant with, the public interest." 280 F.3d

at 1050. But shortly after *Sinclair* was decided, the court in *Fox Television Stations, Inc. v. FCC*, 293 F.3d 537 (D.C. Cir. 2002) ("*Fox II*"), retracted *Fox I*'s definition of "necessary," due to lack of briefing on the subject and the fact that the definition was unnecessary to the court's opinion. *Id.* at 540. Consequently, *Sinclair*, 284 F.3d at 165, and *Fox II* left undecided the question of what "necessary" means in § 11.

The court's statement in *Fox I* regarding the meaning of "necessary" as creating a presumption in favor of modification or elimination of existing regulations was, as noted, made in the context of discussing the available remedies for the court. 280 F.3d at 1048. Nothing in that opinion suggested that under § 11's biennial review mandate the Commission could no longer rely on its predictive judgment or properly-supported inferences in determining to retain a regulation. *Cf. id.* at 1051. The court's observation in *Fox I* about the presumption created by the 1996 Act only came after the court had concluded that the Commission's explanation for its action could not withstand arbitrary and capricious review, and the question became the selection of the appropriate remedy for the court to impose: vacate the regulation or remand the case to afford the Commission another opportunity better to explain its action. *Id.* at 1044, 1048. While *Sinclair* piggybacked on *Fox I*, the court in *Sinclair* did not adopt a general presumption in favor of modification or elimination of regulations when considering a substantive challenge to the adequacy of the Commission's determinations. *Sinclair*, 284 F.3d at 159; *see also id.* at 171 (Sentelle, J., concurring and dissenting in part). Rather, as in *Fox I*, the court in *Sinclair* examined whether the Commission's explanation for its action was arbitrary and capricious without providing a definition of the term "necessary" that differed from that implicit from the long-standing meaning of the term in the statutory provision granting the Commission regulatory authority under 47 U.S.C. § 201(b). *Id.* at 160. Thus, neither *Fox I* nor *Sinclair* provide support for Verizon Wireless' position that § 11 must be interpreted to impose a stricter standard of "necessary" than applies to § 201(b).

For these reasons, we hold that the Commission reasonably interpreted § 11 to require it to "reevaluate regulations in light of current competitive market conditions to see that the conclusion [it] reached in adopting the rule — that [the rule] was needed to further the public interest — remains valid." March 2003 Report, 18 FCC Rcd at 4735. Interpreting the term "necessary" in § 11 in this manner avoids the inconsistent application in related contexts of identical terms used by Congress. Applying the same "necessary in the public interest" standard as in § 201(b) is consistent with both of the qualifying terms ("no longer necessary" and "as the result of meaningful economic competition") that Congress added in § 11 and avoids absurd results where a rule is "necessary" when adopted but not when it is subjected shortly thereafter to biennial review under § 11. The language of § 11 thus indicates that the Commission's first obligation is to determine, under § 11(a), whether the necessity for a regulation continues in light of current market conditions; its second obligation, under § 11(b), is to repeal or modify such regulations it determines are no longer necessary in the public interest as a result of current competitive conditions. The Commission reasonably concluded that the deregulatory presumption arises only after it has determined under § 11(a) that a regulation is no longer necessary in the public interest. *See id.* The provisions of § 11(b) thus make clear that the Commission is under a mandate that extends beyond its normal monitoring responsibilities. Finally, the Commission's interpretation of § 11 is not inconsistent with *Fox I* or *Sinclair*, and the fact that Verizon Wireless can point to an alternative, stricter definition of "necessary" is insufficient to demonstrate that the Commission's interpretation is not owed deference by the court. *See Chevron*, 467 U.S. at 843; *CTIA*, 330 F.3d at 507, 509–10.

### III.

Verizon Wireless also contends that the Commission's failure to complete the 2000 Biennial Review during the year 2000 functions as a default, requiring the court to direct the Commission to repeal § 43.61(a) as it applies to CMRS carri-

ers, and to modify § 63.21(i). Verizon Wireless maintains that the Commission must complete within the biennial year not only the § 11 necessariness review and determination for all its regulations, but also any modification or repeal of regulations that it has determined are no longer necessary. Verizon Wireless asserts that the Commission has taken an "all in good time" approach, contrary to the 1996 Act's deregulatory purpose. Verizon Wireless Br. at 14.

**A.**

The Commission challenges both the court's jurisdiction to consider, as well as Verizon Wireless' standing to challenge, the Commission's timing of the 2000 Biennial Review. The Commission maintains that because Verizon Wireless failed to petition for review of the January 2001 Report setting forth the Commission's interpretation of § 11's timing mandate, that Report has become final and is not subject to judicial review. Yet the Commission made clear in that Report that it did "not set forth final Commission decisions, nor [did] it represent rulemaking action." January 2001 Report, 16 FCC Rcd at 1210. Verizon Wireless thus reasonably delayed seeking rehearing until the timing issue became ripe for review when the June 2002 Order set forth the Commission's § 11 determination to retain § 43.61(a) and § 63.21. *See* 17 FCC Rcd at 11429, 11433. At that point, in Verizon Wireless' view, the Commission acted seventeen months late, and its determination to retain the two regulations was therefore based on unlawful agency action. *See Nat'l Labor Relations Bd. Union v. Federal Labor Relations Auth.*, 834 F.2d 191, 196 (D.C. Cir. 1987) ("*FLRA*") (citing *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546 (D.C. Cir. 1958)). Because Verizon Wireless contends that the June 2002 Order exceeded the Commission's authority, *see FLRA*, 834 F.2d at 195; *accord CTIA*, 330 F.3d at 509, the court has jurisdiction to address the challenge. *See* 5 U.S.C. § 706(2)(A). Review of the June 2002 Order encompasses its timing, which implicitly is based on the interpretation in the January 2001 Report. The Commission's reliance on *ICC v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 279–81 (1987), is misplaced; that

case involved a claimed material error in a single adjudication, not an agency regulation capable of continuing application. *See Functional Music*, 274 F.2d at 546.

The Commission further contends that Verizon Wireless lacks standing to challenge the timing of the Commission's 2000 Biennial Review because any injury it suffered resulted not from the June 2002 Order but from the January 2001 Report construing § 11's timing requirement. We hold that Verizon Wireless has standing to challenge the timing of the Commission's determination in the June 2002 Order to retain § 43.61(a) and § 63.21(i). As an entity continuously burdened by the costs of complying after the biennial review year with what it contends are "unnecessary" regulations under § 11, Verizon Wireless' injuries are concrete and actual, traceable to the Commission's alleged failure to meet the statutory deadline, and redressable by a ruling adopting Verizon Wireless' interpretation of § 11's temporal mandate. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000); *Vt. Agency of Natural Res. v. United States*, 529 U.S. 765, 771 (2000); *cf. Ass'n of Am. R.Rs. v. Dep't of Transp.*, 38 F.3d 582, 585–86 (D.C. Cir. 1994).

**B.**

The Commission concluded that Congress created a timing mandate only for § 11(a), entitled "Biennial review of regulations," which requires the Commission "[i]n every even-numbered year" to review its rules to determine whether they are no longer necessary in the public interest as a result of meaningful economic competition. *See* January 2001 Report, 16 FCC Rcd at 1210; *see also* 47 U.S.C. § 161(a). By contrast, § 11(b), entitled "Effect of determination," requires only that the Commission "shall repeal or modify any regulation it determines to be no longer necessary in the public interest." *See* 47 U.S.C. § 161(b). The Commission reasoned that "Congress thus distinguished between *making determinations* (that certain rules are no longer in the public interest), which must occur within a specified time period i.e.,

every even numbered year, and *taking action* (to repeal or modify rules that are no longer in the public interest) which is not required to be completed within that specific time period." January 2001 Report, 16 FCC Rcd at 1210 (italics in original). We hold that the Commission's interpretation of § 11's timing requirement is reasonable.

Section 11 is ambiguous regarding what the Commission is required to do within the biennial year, and the Commission properly looked to the different phrasing in § 11(a) and (b) as well as to the section headings for guidance. *See Murphy Exploration and Production Co. v. United States Dept. of the Interior*, 252 F.3d 473, 481 (D.C. Cir. 2001) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)). If Congress had intended that within each biennial year the Commission must not only review its rules and determine which were no longer necessary, but also, where applicable, modify or repeal them, it could have included a temporal restriction in § 11(b). It did not, presumably in recognition of the period of time required for notice and comment required by the Administrative Procedure Act ("APA"), *see* 5 U.S.C. § 553, before a Commission rule may be changed. The 1996 Act provided that it "shall not be construed to modify, impair, or supersede Federal . . . law unless expressly so provided in such Act." Pub. L. No. 104–104, § 601(c)(1), 110 Stat. 56 (1996), 47 U.S.C. § 152 note. Section 11 did not authorize the Commission to bypass the APA. Under the circumstances, the Commission reasonably concluded that a timing requirement applied only to § 11(a) and not to § 11(b). The Commission appreciated that it would take time to complete rulemaking proceedings under § 11(b) so as to be in a position to determine whether, and in what manner, to modify or repeal the numerous regulations it had determined were no longer necessary.

Verizon Wireless' contention — that the Commission may delay indefinitely the repeal or modification of regulations it has determined are no longer necessary in the public interest — rings hollow. The Commission completed the § 11(a) review within the biennial year, adopting the Biennial Review Report on December 29, 2000. *See* January 2001 Report, 16

FCC Rcd at 1207. In noting, where it had not found that regulations were no longer necessary, that it remained open to petitions for rulemaking from interested parties, the Commission is referring to its ongoing efforts to repeal or modify unnecessary regulations, not calling into question whether it had timely completed the § 11(a) review. The Commission stated that the "Report fulfills the Commission's year 2000 biennial regulatory review obligations under § 11(a)." *Id.* at 1207. In the § 11(b) proceedings, the Commission invited and responded to public comments contesting its § 11(a) determinations. When the Commission adopted the § 11(b) report on the regulations challenged by Verizon Wireless, seventeen months had passed. *See* June 2002 Order, 17 FCC Rcd at 11416. This was not an unreasonable period of time for completion of the Commission's § 11(b) duties, *see* 5 U.S.C. § 551(b), given the numerous rulemaking proceedings that the Commission was contemporaneously pursuing as a result of the § 11(a) determinations. In any event, were the Commission not to act within a reasonable time, the remedy would be to seek issuance of a writ of mandamus to compel Commission action, *see Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984), and Verizon Wireless made no such filing.

## IV.

Having rejected Verizon Wireless' contentions that the Commission's determination to retain § 43.61(a) and § 63.21(i) was contrary to the requirements of § 11, we turn to its contention that the Commission's decision was arbitrary or capricious. As regards § 43.61(a), Verizon Wireless contends that the Commission failed both to act consistently with its prior findings that the CMRS and international markets are highly competitive, and to explain its rationale for eliminating quarterly reports but not annual reports. Verizon Wireless focuses on the Commission's findings that the wireless market is among the most competitive markets in the industry, that CMRS carriers act only as resellers of international services, and that they occupy a *de minimis* portion of the international resale market. *See* June 2002 Order, 17

FCC Rcd at 11429. Yet in contending that the Commission failed to link the monitoring function to any possible regulatory problem, Verizon Wireless would have the court ignore the Commission's statutory responsibilities, including the need to determine whether forbearance is appropriate. Similarly, Verizon Wireless focuses on the Commission's prior finding that the resale of unaffiliated U.S. facilities-based carriers' switched services presents no substantial possibility of anti-competitive effects in the United States international services market, *see GTE Telecom, Inc.*, 13 FCC Rcd 4378, 4389 (1998), in maintaining that the Commission failed to explain why monitoring of CMRS international resale traffic (by minutes) is necessary to any legitimate regulatory goal.

Contrary to Verizon Wireless' contention, the Commission considered the continuing need for § 43.61(a) in light of present competitive realities. While the Commission's explanation was not lengthy, it sufficed to provide a rational basis for the Commission's decision. *Cf. Sinclair*, 284 F.3d at 160. Although the Commission acknowledged in the § 43.61(a) context that CMRS carriers have only a *de minimis* role in international traffic, it was the Commission's judgment that the small role did not warrant completely abandoning the requirement for any reports, annual or quarterly, from such providers. The Commission identified the usefulness of the information provided by the reports to it and the industry, and given the Commission's statutory obligations, Verizon Wireless fails to show that the Commission did not reasonably conclude annual reporting remained necessary. *See* June 2002 Order, 17 FCC Rcd at 11430.

The Communications Act requires the Commission to "review competitive market conditions with respect to commercial mobile services." 47 U.S.C. § 332(c)(1)(C). The statute makes no exceptions to account for CMRS services' currently small share of switched resale international traffic. An exemption for CMRS carriers from § 43.61(a) reporting would impede the Commission's ability to obtain information on an important segment of the marketplace. The Commission stated that it needs such reports in order to "monitor[ ] trends in the [CMRS] industry." June 2002 Order, 17 FCC

Rcd at 11430. Given that the Commission's regulatory role involves predictive judgments, *cf. Fox I*, 280 F.3d at 1051, the Commission may reasonably anticipate that, as the use of cell telephones increases, CMRS carriers will cease to hold a *de minimis* share of the international telecommunications traffic market, thus highlighting the Commission's ongoing need for data by which to monitor industry trends. Nothing suggests that in enacting § 11 Congress intended to bar the Commission from exercising its predictive judgment in assessing regulatory necessity in light of current competitive market conditions; to the contrary, Congress' use of the same phrase it used in authorizing the Commission to adopt regulations indicates the opposite. Verizon Wireless' assertion that the information collected is duplicative and redundant of other information reported by the underlying facilities-based carriers ignores that other data sources do not include information on CMRS carriers' minutes of use, but rather are limited to revenues. *See* June 2002 Order, 17 FCC Rcd at 11430. Moreover, Verizon Wireless never argued to the Commission that its decision to retain annual reporting was inconsistent with its decision to exempt CMRS carriers from quarterly reporting under § 43.61(c), and hence it cannot now argue that the Commission erred by failing to reconcile these two decisions. *See* 47 U.S.C. § 405.

Similarly, the Commission was not arbitrary and capricious in continuing to require reporting of foreign affiliations of common carriers solely controlled, but not wholly owned, by another § 214 authorized carrier. Verizon Wireless contends that the Commission failed both to confront comments suggesting that § 63.21 does not accomplish its stated purpose, and to respond to less burdensome and potentially more effective alternatives proposed by commenters. Although its response was once again not lengthy, the Commission adequately responded to the comments in light of both the statutory mandate to issue § 214 authorizations only where they serve the "public convenience and necessity," as well as the statutory requirement that the Secretaries of Defense and State be notified of such applications so that potential risks associated with foreign affiliations, such as national security

concerns, may be addressed.  *See* June 2002 Order, 17 FCC Rcd at 11433.  There are, as the Commission wrote, "persons or entities who are barred from holding a Commission authorization."  *Id.*

Accordingly, we deny Verizon Wireless' petition contending that the Commission's interpretation of § 11 is contrary to the deregulatory purpose of the 1996 Act and that the Commission's determination to retain two rules was arbitrary and capricious, and we dismiss Verizon's petition for lack of jurisdiction.